AO 91 (Rev. 11/11)  Criminal Complaint

## UNITED STATES DISTRICT COURT
for the
Eastern District of California

**FILED**
Apr 09, 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. |
| | ) |
| CARLOS IVAN MENDOZA HERNANDEZ | ) 2:26-mj-0040 AC |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ April 7, 2026 _____ in the county of _____ Stanislaus _____ in the _____ Eastern _____ District of _____ California _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(b) | Assault on federal officer with dangerous or deadly weapon |

This criminal complaint is based on these facts:

(see attachment)

☒  Continued on the attached sheet.

/s/ Brian Toy
*Complainant's signature*

FBI Special Agent Brian Toy
*Printed name and title*

Sworn to me and signed via telephone.

Date:  April 9, 2026

City and state:  Sacramento, California

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Brian Toy, being first duly sworn, hereby depose and state as follows:

### I.    PURPOSE

1.    This affidavit is made in support of a Criminal Complaint and arrest warrant based upon probable cause to believe that Carlos Ivan Mendoza violated of 18 U.S.C. § 111(b) (assault on a federal officer with a deadly or dangerous weapon), on April 7, 2026, as detailed below.

### II.    INTRODUCTION AND AGENT BACKGROUND

2.    This affidavit is submitted to establish probable cause that, on or about April 7, 2026, at approximately 6:50 a.m., within the Eastern District of California, defendant Carlos Ivan Mendoza Hernandez violated 18 U.S.C. § 111(b) by assaulting, resisting, and impeding federal officers and employees while engaged in official duties with a dangerous or deadly weapon. Specifically, Mendoza Hernandez refused to comply with lawful orders from federal officers, operated his vehicle in a manner that damaged a federal vehicle, and drove his vehicle toward officers in a manner that would have caused serious bodily injury or death had the officers not taken evasive action.

3.    I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been employed since May 2010. I graduated from the FBI Academy in Quantico, Virginia, in October 2010, where I received training in investigative techniques, including conducting criminal investigations, executing search and arrest warrants, and seizing evidence of violations of United States law. I am currently assigned to the FBI's Sacramento Field Office, Stockton Resident Agency, where I have participated in investigations involving violent crime, firearms offenses, narcotics violations, murder-for-hire, serial killings, bank robbery, and extortion. I have received training and gained experience in interviewing and interrogation, arrest procedures, physical surveillance, search warrant preparation and execution, and the seizure and analysis of electronic evidence, including social media. I have testified before federal grand juries and executed search and arrest warrants.

4.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### III.   PROBABLE CAUSE[1]

4.      On or about April 7, 2026, four federal law enforcement officers conducted an operation in the city of Patterson, California, Stanislaus County, to locate, and arrest Mendoza Hernandez for immigration violations.  Three officers were with Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), and one was an employee of Customs and Border Protection (CBP).  These officers are referred to here as Agents 1 through 4.  Agents 1, 2, and 3 are ERO officers while Agent 4 is a CBP officer.

5.      Early on the morning of April 7, the team established surveillance at Mendoza Hernandez's residence in Patterson.  Patterson is a city located in Stanislaus County which is in the Eastern District of California.  The purpose of the operation was to locate and arrest Mendoza Hernandez because he is an illegal alien with no status in the U.S.  In the driveway of the residence, agents observed a black Toyota C-HR parked in the driveway.  The Toyota C-HR displayed California license plate number 8WVR114, which the officers believed was Mendoza Hernandez's vehicle based on intelligence gathered prior to the operation.  The registered owner of the vehicle is a C.M. with a registration address at the residence where agents observed the Toyota C-HR.  At approximately 6:40 a.m., Agent 4 observed a male, later identified as Mendoza Hernandez, drive off in the C-HR.

6.      Officers followed Mendoza Hernandez as he traveled westbound on Sperry Avenue toward Interstate 5.  A short time after passing Roger Road, Agent 1 activated his/her emergency lights to initiate a traffic stop.  Mendoza Hernandez pulled over on the right shoulder.  Agents parked a brown Ford F-150 directly behind Mendoza Hernandez's vehicle, and Agent 3 positioned his/her vehicle in front of Mendoza Hernandez's vehicle with rear emergency lights activated.

---

[1]      The following summary of probable cause is the product of interviews conducted of two agents who participated in the traffic stop as well as my review of a White Tesla motorist's dashboard camera footage posted to the website of a Sacramento news outlet.  The dashboard camera video posted to the news website shows portions of the car stop and subsequent events as the stop unfolds.  I also reviewed a second dashboard camera video from a second vehicle on the scene that was posted to the website of CNN.  This video is from the vehicle behind a white Tesla and it shows the car stop and its events.

7.    Agent 1 approached Mendoza Hernandez on the driver's side identifying him/herself as an ICE agent.  As detailed more below, three of the agents were wearing exterior clothing that identified themselves as being law enforcement agents or as "POLICE."  They did not have masks concealing their faces during the stop.  As the stop unfolded, Agent 4 was behind Agent 1 on the driver's side.  Agents 2 and 3 positioned themselves on the passenger side of the vehicle.  The driver identified himself as Mendoza Hernandez.  Agent 4 also identified Mendoza Hernandez based on unique features of his "big ears" which were consistent with the photo of him that was obtained prior to the operation. Agent 1 informed Mendoza Hernandez that he was being detained and instructed him to step out of the vehicle. Agent 4 recalled that Agent 1 had instructed Mendoza Hernandez "a lot of times" and that the conversation was going in circles.  Agent 4 also stated that at no time during the encounter did Mendoza Hernandez express that he did not believe the officers were who they presented themselves to be. Despite repeated lawful commands, Mendoza Hernandez refused to comply with the agent's requests. Agent 1 advised him that his concerns could be addressed before a judge, but Mendoza Hernandez continued to refuse to comply with the requests of Agent 1.

8.    During the encounter, agents also informed Mendoza Hernandez that they may have to break the window of his vehicle and extract him out of the vehicle.  Due to his continual refusal to comply with repeated audible commands to step out of the vehicle, Agent 2, acting in a supervisory role, authorized extraction of Mendoza Hernandez from the vehicle.  To effectuate that extraction, Agent 3 broke the front passenger window of Mendoza Hernandez's vehicle.  At around the same time, Mendoza Hernandez placed the vehicle in drive moving the vehicle forward and to the left approximately one foot hitting Agent 1.  Hernandez Mendoza then quickly shifted the vehicle in reverse and abruptly forced the vehicle in a rapid backward motion in what agents understood to be an attempt to flee.  With the front wheels turned left, the vehicle moved backward sharply and collided with the front bumper area of the agents' F-150 parked behind Mendoza Hernandez, forcing Mendoza Hernandez's front passenger door to bend beyond its normal range and causing significant damage to the passenger door, as shown in Figures 1 and 2 below.



*Figure 1 –Hernandez Mendoza's vehicle begins rapid backward reverse action with vehicle's reverse tail lights visible.*



*Figure 2 – After rapid reverse acceleration, Hernandez Mendoza's vehicle struck the front bumper area of the agents' Ford F-150, forcing the passenger door open and causing damage to the door.*

9.      After striking the front of the agents' Ford F-150, Hernandez Mendoza's vehicle rotated more than 45 degrees, facing Agent 1 and Agent 2.  After a brief pause, Mendoza Hernandez then shifted into drive and accelerated forward toward Agents 1 and 2, as shown in Figure 3 below. Agent 1 was in the direct path of Mendoza Hernandez's vehicle and thus moved to his/her right to avoid being struck by the approaching vehicle driven by Mendoza Hernandez.



*Figure 3 – Hernandez Mendoza begins to reverse his vehicle to make an escape.*

10.     Based on my training and experience, and after reviewing relevant video evidence from the encounter, I believe that if Agent 1 had not moved, he/she would have been struck by Mendoza Hernandez and would have suffered serious bodily injury or death.

11.     During this incident, Agents 1 and 2 discharged their firearms at Mendoza Hernandez. At this time, the FBI has not been able to interview Agents 1 and 2.  However, Agent 4 provided details of the circumstances surrounding the shooting from his/her account.  As such, your affiant is disclosing this to the Court to provide context.  Agent 4 stated that it was not until after Agent 3 broke the front passenger windshield that Agents 1 and Agent 4 drew their guns.  After the breaking of the window, Mendoza Hernandez drove his vehicle to the front left, striking Agent 1 and Agent 3's vehicle.[2]  It was around this time that Agent 1 discharged his/her firearm.  There was a brief pause from the shooting as Mendoza Hernandez appeared to have been shot and stopped.  However, Mendoza Hernandez again

---

[2]     I examined the rear of Agent 3's vehicle after the incident.  It did not appear there was damage to the vehicle.  This is not necessarily contradictory to Agent 4's account; rather, it serves to clarify the current facts and statements known to me.  The account of Mendoza Hernandez striking Agent 1 is consistent with video evidence that I have reviewed.  The video appears to show Mendoza Hernandez moving his vehicle to the front left for about the distance of one foot, striking Agent 1. Agent 4 could not recall Mendoza Hernandez backing up his vehicle.  However, video evidence of the incident demonstrates that Mendoza Hernandez did indeed back up his vehicle causing damage to his vehicle and damage to the agents' Ford F-150.

moved his vehicle, pulling out.  This time both Agents 1 and 2 discharged their firearms.  Agent 4 did not discharge his/her firearm due to Agent 4 observing a crossfire situation between him/her and Agent 3.

12.    Agent 3 provided a similar account.  Agent 3 noted that Mendoza Hernandez refused to follow instructions from Agent 1 about turning off his vehicle and stepping out of the vehicle.  After Agent 3 broke the front passenger side window, Agent 3 reached in to open the door from the inside.  At this time, Mendoza Hernandez moved his vehicle, backing it up a little to be able to pull forward to escape due to Agent 3's vehicle blocking the front of Mendoza Hernandez's vehicle.  At that point, Mendoza Hernandez "gunned it," meaning he accelerated the vehicle.  It was at this time that Agent 3 heard the gunshots.  Agent 3 observed that when the vehicle was accelerating, Agent 1 was directly in front of the vehicle.  Agent 3 "jumped out of the way."  Agent 3's belief is that had Agent 1 not taken evasive action, Agent 3 would have been hit.

13.    The investigation is ongoing as we continue to collect evidence and conduct additional interviews but, based upon the current evidence known to me at this time, I believe agents discharged their firearms in response to Mendoza Hernandez driving his vehicle striking Agent 1 and then attempted to flee – all of which posed an immediate threat of serious bodily injury or death to Agents 1 and 2.  As such, I believe there is probable cause to believe that Mendoza Hernandez violated 18 U.S.C. § 111.[3]

14.    Mendoza Hernandez continued driving, jumped the center median, and entered the opposite lanes of traffic, traveling westbound in the eastbound lanes of Sperry Avenue, as shown in Figure 4 below.

---

[3]    FBI has not interviewed Mendoza Hernandez the incident on April 7, 2026.  He is currently hospitalized and under the care of medical professionals for injuries from the incident.



*Figure 4 – As Hernandez Mendoza's vehicle accelerates forward, it veers left across Sperry Avenue and over the center stone median into traffic heading in the opposite direction.*

15.     While on the opposite side of Sperry Avenue, the impact of crossing the median caused two of the vehicle's hubcaps to fly off into the roadway.  In addition, dashboard camera video shows a black object exit the open passenger door of Mendoza Hernandez's vehicle, as shown in Figure 5 below. Agents later discovered the black object was a Nike backpack, as more fully described in Attachment A-3.



*Figure 5 – The force of crossing the stone median causes two hubcaps to fly off of Hernandez Mendoza's vehicle as he moves the wrong way against traffic on Sperry Avenue – a black object later determined to be a backpack ejects on to the street from Hernandez Mendoza's vehicle as indicated by the blue arrow above.*

16.    As Hernandez Mendoza's vehicle continued driving away from agents, it headed the wrong way up Sperry Avenue toward the freeway.  At some point, Hernandez Mendoza's vehicle collided with another vehicle, struck a guardrail, and came to rest approximately 500 feet from the traffic stop on the right shoulder of the westbound lanes.

17.    Officers entered their vehicles driving to the final location of the C-HR.  Officers took Mendoza Hernandez out of the vehicle and rendered first-aid.  Agent 2 called for emergency medical services.  Personnel transported Mendoza Hernandez to a local hospital where he is currently being treated by medical staff.

18.    During his treatment at the hospital, Mendoza Hernandez provided spontaneous statements indicating that the incident was recorded on a dash camera.  The FBI has not yet conducted a search of Mendoza Hernandez's C-HR to locate a dash cam.

19.    After the incident, I obtained photographs of Agents 1 through 4. The photographs show each agent wearing their body armor, duty belt, and any other outer clothing worn during the traffic stop. Below is a summary of the observations I was able to make:

- Agent 1 wore a green body armor vest displaying "POLICE" in black letters on the front. The back of the vest displayed "POLICE" in large yellow letters, with "ERO" in smaller letters below.

- Agent 2 wore a green body armor vest displaying "POLICE" in white letters on the front. In smaller letters below were the markings "DHS" and "ICE." The back of the vest displayed "POLICE" in large white letters, with "FEDERAL OFFICER" above and "FUGITIVE OPERATIONS" below in smaller lettering.

- Agent 3 wore a green body armor vest with a gold badge on the left chest displaying "ICE." The back of the vest displayed "ERO" in large gold letters.

- Agent 4 wore a black jacket with no visible law enforcement markings. However, Agent 4 wore a body armor vest underneath, with both the front and back displaying "POLICE." On Agent 4's upper left chest, affixed to the body armor, was a silver law enforcement badge. At the time Agent 4 was photographed, his/her black jacket was unzipped, and the "POLICE"

marking was visible. The back of Agent 4's body armor, which was concealed by the jacket, displayed "POLICE" in large white letters.

20. Based on my knowledge of this case, I know that Agent 1 made the majority of contact with Mendoza Hernandez during the traffic stop. Agent 1 was responsible for directly communicating with Mendoza Hernandez through the driver's side window. Accordingly, I believe that Agent 1's body armor vest, which clearly displayed "POLICE," would have been visible to Mendoza Hernandez during the encounter.

## IV.   CONCLUSION

21. For the reasons set forth in this Affidavit, I respectfully request the issuance of a Criminal Complaint and arrest warrant for Carlos Ivan Mendoza Hernandez for violation of 18 U.S.C. § 111(b), on or about April 7, 2026.

## V.   REQUEST FOR SEALING

22. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this Criminal Complaint.  I believe that sealing this document is necessary because Mendoza Hernandez is currently being treated for his wounds at a hospital that is accessible to the public.  The story of this incident has been published nationally in widely-read newspapers, on popular websites, and through local news broadcasts. As a result, FBI and its partners have had agents stationed in Mendoza Hernandez's hospital room to arrest him on this charge if/when he is medically cleared and discharged from the hospital.  In the meantime, the hospital and the agents must monitor who has access to Mendoza Hernandez in order to avoid a dangerous escalation within a medical environment.  Public statements and press coverage have caused some community members to become agitated.  If the existence of this Criminal Complaint were made known before Mendoza Hernandez's arrest, agents believe it could cause further escalation at the hospital and create an unsafe environment for hospital staff and law enforcement assigned to monitor Mendoza Hernandez.  To facilitate communication with Mendoza Hernandez and his lawyer and family, on April 9, 2026, FBI arranged for Mendoza Hernandez's attorney and spouse to visit him in the hospital. FBI has also made arrangements for future visits and/or communications as Mendoza Hernandez recovers from his injuries.

However, the impression left by some public comments made immediately after the incident remain an irritant that could lead to attempts to retaliate or obstruct officers and agents who are monitoring Mendoza Hernandez's condition.  Thus, the United States respectfully requests that the Criminal Complaint and arrest warrant remain under seal until Mendoza Hernandez is medically cleared and placed under arrest on this charge.  Once that is accomplished, the United States will promptly move to unseal the Criminal Complaint.  In sum, premature disclosure of the contents of this Criminal Complaint and arrest could create a dangerous situation for medical staff and law enforcement who are responsible for Mendoza Hernandez's treatment and eventual arrest.

Respectfully submitted,

/s/ Brian Toy

Brian Toy
FBI Special Agent

Subscribed and sworn to before me on:   April 9, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE