HEATHER E. WILLIAMS, Bar No. 122664
Federal Defender
DAVID HARSHAW, KY Bar No. 86435
Assistant Federal Defenders
OFFICE OF THE FEDERAL DEFENDER
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: (916) 498-5700
Fax: (916) 498-5710

Attorneys for Defendant
CARLOS MENDOZA HERNANDEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CARLOS MENDOZA HERNANDEZ, <br><br> Defendant. | Case No. 2:26-cr-0053-DAD <br><br> **OPPOSITION TO MOTION TO REVOKE THE MAGISTRATE JUDGE'S BAIL ORDER** |

**Introduction**

Comes the Defendant, Carlos Mendoza Hernandez, and files his Opposition to the government's motion to revoke Magistrate Judge Claire's granting of bail. Dkt. 17. The Court in its minute order, Dkt. 14, stated:

> It is the court's preliminary view that, as framed by the government, the question of whether defendant's release on conditions would pose a flight risk or a danger to the community turns solely on the events which took place on the morning of April 7, 2026. The record before the court includes reference to more than one video recording of those events. Accordingly, the court would invite submission of those video recordings for the court's review, under seal if appropriate, prior to the April 20, 2026, hearing on the government's motion to revoke.

*Id*. Per this invitation, Mr. Mendoza today files the two videos he offered to Magistrate Judge Claire. *See* Exhs. A and B. Exhibit A is a news interview of the driver of the second-in-line Tesla at the scene. Exhibit B is the dashcam video from this Tesla. Mr. Mendoza also files two videos he did not have at the prior bail hearing. Exhibit C is a slowed down and zoomed in version of

Exhibit B. And Exhibit D is a slowed down and zoomed in version of the dashcam video from first-in-line Tesla at the scene. This video was lodged yesterday by the government. *See* Dkt. 17-3.

Herein, Mr. Mendoza will discuss these videos as well as address other arguments made by the government.

**The Magistrate Judge's Reasoning Regarding Danger and Flight Risk**

The essence of Magistrate Judge Claire's reasoning for release was as follows:

> Even taking the allegations of the affidavit in support of the complaint at face value, I don't think those allegations support the inference that Pretrial Services and the Government urge that this Defendant poses a danger to the community generally outside the unique circumstances of this event or that he presents a serious risk of non-appearance.

Dkt. 17-2, p. 8. This is sound reasoning given the circumstances of this incident. It is unlikely that Mr. Mendoza will again be faced with a situation wherein he will be surrounded by DHS/ICE agents with a pistol menacing him just above his face, brandished by an agent who broke his agency's rules of engagement.

**The Incident**

There is no reason to go chapter and verse through the incident. Assuming the Court has read the government's motion, there is no need to rehash it. The videos, particularly Exhibit D, show most of what is necessary for a full understanding. There are, however, a few salient points to note.

To begin with, the witness in the news video, who said that the first shot occurred before the car moved, is incorrect. *See* Exh. A. The two events do happen virtually simultaneously, but the car moves before the shot. *Compare* Exh. D at 5:30 (wheel first moves) to Exh. D at 7:10 (puff of smoke from first shot).[1]

The next notable thing from Exhibit D is that at 4:35 the man identified by the government as Agent 4 removes his gun from his holster. This is important because it can be

---

[1] The smoke would have occurred a short time after the shot. No muzzle flash is visible for this shot, unlike many of the others. Note: The dashcams of Teslas seem to record at 35 frames per second. For example, 5:30 would represent the thirtieth frame of the fifth second, not 30/100ths into the fifth second.

*United States v. Mendoza Hernandez* – Opposition to Motion to Revoke

2

assumed this was the moment Agent 3 broke out the window, because the complaint and the search warrant both say: "Agent 4 stated that it was not until after Agent 3 broke the front passenger windshield that Agents 1 and Agent 4 drew their guns." Dkt. 1 at 6; Dkt. 17 at 6. Interestingly, Agent 4 is wrong that this was the time Agent 1 also drew his gun, because the video clearly shows he was already leaning over the fender with his gun drawn at this time.

Agent 1's report, by comparison, seems to track the video. Within his report, he admits that prior to the breaking of the passenger window, he was leaning over the fender and pointing his gun at Mr. Mendoza. Dkt. 17-1 at 15. He admits he was doing this as a show of force to get Mr. Mendoza to comply with his request to exit the car. *Id*. Previously, Mr. Mendoza had said he wanted to call his wife before he exited the car. *Id*. at 16. This request was denied. *Id*. Instead of allowing this simple gesture of goodwill to a brown man surrounded by ICE/DHS agents in this country's current climate, the agents escalated the situation. They decided to do a forced extrication after only two or three minutes had passed.[2]

**Statutory Detention Factors – 18 U.S.C. § 3142(g)**

Mr. Mendoza accepts the law governing detention as the government lays out. *See* Dkt. 17 at 3-4. Mr. Mendoza will address the statutory factors in order.

**§ 3142(g)(1): the nature and circumstances of the offense**.

Mr. Mendoza agrees that on their face the facts qualify as a crime of violence.

**§ 3142(g)(2): the weight of the evidence against Mr. Mendoza**.

The government says it has an overwhelming case. Dkt. 17 at 15-16. Mr. Mendoza, however, believes that multiple factors point to the weakness of the government's case.

To begin with, Agent 1 violated the rules of engagement he was supposed to follow. *See* DHS Policy Statement 044-05, Department Policy on the Use of Force (Sept. 7, 2018). The pertinent policy reads:

> DHS LEOs should seek to employ tactics and techniques that effectively bring an incident under control while promoting the safety of LEOs and the public, and that minimize the risk of unintended injury or serious property damage. DHS LEOs should also avoid intentionally and unreasonably placing themselves in

---

[2] The agents' inability to successfully negotiate this situation is further illustrated by the piece of shrapnel that hits Agent 1 when he gets caught in Agent 2's crossfire. Exh. D at 16:35.

positions in which they have no alternative to using deadly force.

*Id.* at p. 3. Here, it is hard to see how it is justified, after two to three minutes, to break into Mr. Mendoza's car when letting him call his wife would have ended the situation. Indeed, it is not hard to imagine that this incident occurred because the agents were frustrated that Mr. Mendoza did not immediately submit to their control. It is also hard to see how it is justified to put yourself into a position of leaning on a fender to point your gun and then later claim that Mr. Mendoza's actions made you afraid for your life or the lives of others. The but for cause of all of this was ICE's culture of cowboy law enforcement – all show of force, very little patience and understanding.

There is also a ready-made defense against these charges under the facts of this case. Here, the agents' excessive force is a defense. *United States v. Span*, 75 F.3d 1383, 1388-89 (9th Cir. 1996). This is an eminently triable case. Indeed, it is so triable, Mr. Mendoza doubts the government will dare tell the grand jury about an excessive force defense when they are presenting this case.

### § 3142(g)(1): the history and characteristics of the person.

The government is concerned about a cocaine test. Dkt. 17 at 16. Although the undersigned has not spoken to Mr. Mendoza since Tuesday because he has been in three jails in three days, the undersigned is confident that Mr. Mendoza will admit that misrepresenting drug use to Pre-Trial Services was a mistake. As mitigation, Mr. Mendoza was forthright that he was occasional user with the hospital, which can be confirmed from his medical records. The undersigned also offers that because of Mr. Mendoza's injuries, there was a rush to get a Pre-Trial interview done. Consequences might not have been fully understood. That all said, the undersigned is incredibly concerned that the government got its hands on Mr. Mendoza's HIPPA protected medical records. Absent an explanation, this is outrageous.

Next, just because Mr. Mendoza has a tattoo does not mean he misrepresented to Pre-Trial Services that he was not in a gang. *See* Dkt. 17 at 17. The government offers no evidence of current gang membership in this country. Mr. Mendoza has no criminal record in the states. Moreover, many people have fled El Salvador to find a changed life here. The pressure on young

men to join a gang can be immense. As to the alleged conviction in El Salvador, as stated above, the undersigned has not had a chance to met with Mr. Mendoza and speak about it. The undersigned does note that the conviction is from 16 years ago.

As to the government's concerns about community ties, *see* Dkt. 17 at 18, the rushed pretrial interview prevented a more fulsome inquiry. As to his employment history, for example, Mr. Mendoza was prepared to offer the name of his current employer, but he was never asked for it by Pre-Trial. Mr. Mendoza is still prepared to offer it. Also, as to community ties, Magistrate Judge Claire made her decision, in part, because she was able to see a gallery of supporters. This Court will see the same.

Additionally, letters of support are appended as Exhibit E to this brief. Selections from these letters are below:

**Faith in the Valley**: "Carlos is a valued and trusted member of our community who consistently demonstrates integrity, compassion, and a deep commitment to their family and those around them. They are someone who shows up for others, whether through volunteering, supporting neighbors, participating in community, or faith-based activities. His presence has had a meaningful and positive impact on our broader community."

**Local Public Officials**: "It is our understanding that Faith in The Valley has been actively accompanying the family and will continue to do with Carlos. They'll be offering support while affirming the importance of complying with the legal conditions given by the court."

**Father Misael Avila**: "Carlos is not alone. He is surrounded by a strong network of family, parishioners, and community members who care deeply for him. He is a devoted father. Zoe is one year and ten months old; her well-being depends greatly on the presence of both her parents, and Carlos has consistently shown himself to be a stabilizing and loving figure in her life. He has never had any problems in the community. To my knowledge, he has lived peacefully and cooperatively with his neighbors and has not been a source of conflict. He is a man of peace who strives to live his Catholic values. In his parish, he has been respectful, humble, and sincere in his desire to grow as a father and as a person of faith."

**Rev. Nhan H. Tran, Pastor**: "Carlos, alongside his fiancée Cindy Ramirez, has been connected to our parish through their faith and family life. Their daughter received the Sacrament of Baptism in our church — a meaningful and sacred moment that reflects a commitment to raising their child within the Catholic faith and community. Through this, Carlos and his family have been part of the spiritual life of our parish."

**El Concilio California**: "ECC has witnessed Carlos and his family's responsibility, reliability, and deep roots in Patterson. They are supported by a broad network of family, friends, and community members who are committed to standing with them throughout this process. Our collective presence reflects not only solidarity, but also the strong community ties, accountability, and stability that Carlos and his family maintain."

**EMAC (Empowering Marginalized Asian Communities)**: "No one, regardless of immigration status, should be denied basic human rights, medical care, or justice."

### § 3142(g)(1): danger to the community.

Mr. Mendoza is not a danger to the community. He is a father of a young child, has a loving partner/fiancé, and is a hard-working man wanting to support his family. Unfortunately, this case is another in a series of the tragic interactions between DHS/ICE agents and people they were sworn to protect. Immigrants and the people who support immigrants are not the enemy.

Mr. Mendoza just wanted to talk to his wife before being taken into custody by the agents who surrounded him. These agents could not spare five minutes to accommodate this modest request. Instead, they pointed a gun at him and ignored their own rules of engagement. As Magistrate Judge Claire found, the circumstances that caused this incident are not likely to present themselves again if he is released.

### Conclusion

This court should deny the government's motion to revoke bail.

HEATHER WILLIAMS
Federal Defender

Date: April 17, 2026

/s/ *David Harshaw*
DAVID HARSHAW
Assistant Federal Defender

*United States v. Mendoza Hernandez* – Opposition to Motion to Revoke

Attorneys for Defendant
CARLOS MENDOZA HERNANDEZ